**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

ANTHONY J. ALIUCCI,         )
                                 )
           Petitioner,         )
                                 )
      v.                      )        Civil No. 10-1297
                                 )        Criminal No. 08-69
UNITED STATES OF AMERICA,  )
                                 )
           Respondent.      )

## <u>MEMORANDUM OPINION</u>

**I.     INTRODUCTION**

This matter is before the Court on a Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 filed by *pro se* Petitioner Anthony J. Aliucci. (Docket No. 57). Petitioner claims that his sentence should be vacated based on the Supreme Court's decision in *Skilling v. United States*, 130 S.Ct. 2896 (2010), which he alleges constitutes an intervening change in the law relating to the "honest-services" theory of prosecution under 18 U.S.C. § 1341. (*Id.*). The Government has opposed Petitioner's motion, arguing that the violation of 18 U.S.C. § 1341 to which Petitioner pled guilty was not based on an "honest-services" theory and was, instead, based on Petitioner's use of false and fraudulent pretenses, representations, and promises to defraud certain victims of money. (Docket No. 61). Petitioner's motion is now fully briefed and ripe for disposition. (Docket Nos. 57, 61, 63, 65, 68). Upon consideration of the parties' submissions, and for the following reasons, Petitioner's Motion [57] is DENIED.

**II.    BACKGROUND**

On February 6, 2008, a federal grand jury in the Western District of Pennsylvania returned a three-count indictment against Petitioner, charging him with three counts of mail

fraud, in violation of 18 U.S.C. § 1341.[1]  (Docket No. 1).  In brief, the indictment alleged that Petitioner knowingly devised a scheme to defraud Global Nursing Solutions, Inc. ("Global") of approximately $1 million by materially false or fraudulent pretenses, representations, or promises.  (*Id.* at 2).  As part of this scheme, Petitioner, while working for Global pursuant to a mutual services agreement, was accused of representing to Global that Nurses Network International ("NNI") had provided various services to Global, when, in fact, NNI had not.  (*Id.* at 3).  Based on Petitioner's misrepresentations, it was alleged that Global paid money to NNI. (*Id.*).  Specifically, for each count of mail fraud, the indictment alleged that on a particular date, Petitioner caused a check to be deposited with the commercial interstate carriers, Federal Express and Worldwide Express, so that said check would be delivered to NNI based upon Petitioner's false and fraudulent representations.[2]  (*Id.* at 4-5).

---

[1] In relevant part, 18 U.S.C. § 1341 provides:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises … deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier … shall be fined under this title or imprisoned not more than 20 years, or both.

[2] As an illustration of Petitioner's deposits, the indictment contained a chart, which detailed the date, item, carrier, and addressee for each alleged fraudulent mailing.  (Docket No. 1 at 4-5).  A replica of said chart is found below.

| Count | Date | Item | Carrier | Addressee |
|---|---|---|---|---|
| 1 | August 5, 2005 | Check #1232 for $100,000 | Fed Ex | Ravi Pasupula News (sic) Network International 9423 Palm Bay Cir. Raleigh, NC 27617 |
| 2 | October 28, 2005 | Check #1373 for $15,000 | Worldwide Express | Nurses Network International 9423 Palm Bay Cir. Raleigh, NC 27617 |
| 3 | December 8, 2005 | Check #1458 for $30,000 | Worldwide Express | Nurses Network International 9423 Palm Bay Cir. Raleigh, NC 27617 |

Thereafter, on November 26, 2008, Petitioner pled guilty to Count One of the indictment, pursuant to a written plea agreement with the Government. (Docket Nos. 42, 43, 46). At the time of his plea, Petitioner was 39 years old and had attained a bachelor's degree in business management. (Docket No. 46 at 3-4). He had no difficulty communicating with his attorney or the Court. (*Id.* at 4). He averred that he was not under the influence of drugs or alcohol nor was he under the care of a physician, therapist, psychologist or psychiatrist. (*Id.*). Petitioner stated that he fully understood the proceedings; his counsel opined that Petitioner was competent to plead; and the Court found that Petitioner was competent to meaningfully participate in the proceeding based on his response to the Court's questions and his demeanor in the courtroom. (*Id.* at 5). In this Court's estimation, Petitioner is a sophisticated individual, who clearly had the mental capacity and ability to understand the nature and circumstances of the proceedings and the consequences of his guilty plea.

At the plea hearing, the Court examined Petitioner concerning the count to which he intended to plead guilty:

> The Court: Now, [Petitioner], do you understand that you are charged at Count 1 and may plead guilty to the crime of frauds and swindles commonly known as mail fraud in violation of Title 18, United States Code, Section 1341? Do you understand that, sir?
>
> Petitioner: Yes, Your Honor.
>
> The Court: And specifically, sir, do you understand that at Count 1 you are charged with knowingly devising a scheme to defraud or to obtain money, property, or the intangible right of honest services by materially false or fraudulent pretenses, representations or promises, and in attempting to do so deposited and caused to be deposited Check No. 1232 for $100,000 on August 5, 2005, with the commercial interstate carrier Federal Express? Do you understand that, sir?
>
> Petitioner: Yes, Your Honor.

> The Court:  Do you understand the nature of this charge, sir?
>
> Petitioner:  Yes, Your Honor.
>
> The Court:  Do you have any questions about the charge at this time?
>
> Petitioner:  No, not at this time, Your Honor.

(Docket No. 46 at 6-7).   Later during the hearing, the Assistant United States Attorney summarized the nature of the scheme and Petitioner's involvement as follows:

> The … final aspect of the scheme involved [Petitioner's] false representations to Global that a company in North Carolina known as NNI had provided services to Global when, in fact, NNI had not—or at least had not provided all the services that were represented by [Petitioner].
>
> Based on these representations, Global paid several hundred thousand dollars to NNI in North Carolina.  After Global finally became suspicious regarding the payments to NNI, Global contacted NNI, at which point Global learned [Petitioner] owed money to NNI.  The monies paid by Global was (sic) credited to [Petitioner] in connection with his own business.
>
> On August 5th of 2005, as a result of information submitted by [Petitioner] to Global regarding money being owed to NNI in North Carolina, Global sent the check described in Count 1 to NNI in North Carolina in the amount of $100,000.

(*Id.* at 30-31).   After listening to said description, Petitioner stated his agreement with the Government's summary and further stated that he had no additions or corrections to make.  (*Id.* at 31).  Petitioner's counsel echoed this latter sentiment.  (*Id.*).

In his plea agreement, Petitioner "waive[d] the right to take a direct appeal from his conviction or sentence" and "waive[d] the right to file a motion to vacate sentence, under 28 U.S.C. § 2255, attacking his conviction or sentence, and the right to file any other collateral proceeding attacking his conviction or sentence."[3]  (Docket No. 42 at 2-3).  The agreement also

---

[3] The waiver provision was subject to a limited set of exceptions under which Petitioner reserved his appellate rights in certain, limited circumstances.  (*See* Docket No. 42 at 2-3).  None of these exceptions is relevant to Petitioner's § 2255 motion.

contained a paragraph wherein Petitioner averred that he had read and discussed the plea agreement with his attorney.[4]  (*Id.* at 4-5).

During the plea hearing, Petitioner stated that he had read and understood the terms and conditions of his plea agreement and that he agreed with all of the terms therein.  (Docket No. 46 at 13-18).  Petitioner also acknowledged his signature on the agreement's final page.  (*Id.* at 14).  The Court then examined Petitioner concerning the waiver provisions contained in the plea agreement:

> The Court:  [Petitioner], do you understand that generally you or the Government would have the right to appeal any sentence that this Court could impose, but you have entered into a plea agreement under which you have waived some or all of your appeal rights, including the right to take a direct appeal under Title 28, United States Code, Section 1291 or Title 18, United States Code, Section 3742 subject to the exceptions that were spelled out in the plea agreement?  Do you understand that sir?
>
> Petitioner:  Yes, Your Honor.
>
> The Court:  Further, do you understand that pursuant to the plea agreement you have waived your right to file a motion to vacate sentence under Title 28, United States Code, Section 2255 and the right to file any other collateral proceeding?  Do you understand that, sir?
>
> Petitioner:  Yes, Your Honor.
>
> The Court:  Accordingly … you have limited rights to an appeal, if any.  Now, has your attorney reviewed with you … your appeal rights and what you may be waiving?
>
> Petitioner:  Yes, Your Honor.
>
> The Court:  So you do understand, then, that your appeal rights are limited.

---

[4] Specifically, Petitioner and his counsel executed the plea agreement directly below the following passage:

I have received this letter from my attorney, Anthony Bittner, Esquire, have read it and discussed it with him, and I hereby accept it and acknowledge that it fully sets forth my agreement with the Office of the United States Attorney for the Western District of Pennsylvania.  I affirm that there have been no additional promises or representations made to me by any agents or officials of the United States in connection with this matter.

(Docket No. 42 at 4-5).

Petitioner:  Yes, Your Honor.

(*Id.* at 18-19).  Ultimately, after an extensive colloquy, Petitioner admitted his guilt relative to Count One and the Court accepted his guilty plea, finding that Petitioner was competent and that his plea was voluntary.  (*Id.* at 34).

Prior to sentencing, the Court ordered the United States Probation Office to prepare a presentence investigation report.  (Docket No. 44).  The report detailed Petitioner's offense conduct, including the factual allegations which formed the basis of Count One of the indictment.  On March 5, 2009, Petitioner, through counsel, filed his "Objections/Position With Respect to Presentence Investigation Report," wherein he objected to the potential application of certain sentencing guidelines and to the amount of restitution.  (*Id.*).  Petitioner did not, however, object to the report's factual content.  (*Id.*).

At the sentencing hearing held on April 8, 2009, Petitioner, through his counsel, indicated that he had no additions or clarifications as to the factual statements contained in either the presentence investigation report or its addendum, which was received by the Court on March 24, 2009.  (Docket No. 55 at 8-9).  Petitioner was sentenced to 48 months imprisonment and three years of supervised release.  (Docket No. 54).  Petitioner was also ordered to pay $1,342.293.00 in restitution and a $100.00 special assessment was imposed.  (*Id.*).  Petitioner did not file a direct appeal.

Petitioner filed the pending *pro se* motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255(a) on October 5, 2010.  (Docket No. 57).  Subsequently, the Court entered an Order pursuant to *United States v. Miller*, 197 F.3d 644 (3d Cir. 1999), advising Petitioner that all federal constitutional claims must be included in a single habeas corpus petition and of his right to:  (1) withdraw the pending petition and file one new, all-inclusive § 2255 petition setting

forth every ground which may entitle him to relief from the conviction and sentence, provided that such motion is filed within the one-year statute of limitations; (2) amend the § 2255 petition presently on file with any additional claims or materials within 120 days; or (3) choose to have the petition ruled on as filed. (Docket No. 58 at 1-2). In addition, given its apparent untimeliness, the Court, as part of its Order, issued upon Petitioner a rule to show cause why his motion should not be dismissed as time-barred under § 2255(f). (*Id.* at 3).

Petitioner filed a response to the Court's October 6, 2010 Order with the Clerk of Court on October 25, 2010, asserting that he wished to proceed with his motion to vacate, as previously filed. (Docket No. 59 at 1). Included in said filing, Petitioner also responded to the Court's rule to show cause, stating that the Court should not deny Petitioner's motion as time-barred because an "intervening change in the law is … the grounds for [Petitioner's] request for relief," which makes his motion timely pursuant to § 2255(f)(3). (*Id.* at 5).

On October 26, 2010, the Court ordered the Government to file its response to Petitioner's motion, (Docket No. 60), and said response was filed on November 16, 2010, (Docket No. 61). Thereafter, on December 15, 2010, the Court received a letter from Petitioner, indicating that he had not received a copy of the Government's response, which the Court then forwarded, via email, to the Assistant United States Attorney. That same day, the Assistant United States Attorney responded to the Court's email, stating that he had sent a copy of the Government's response to the Petitioner that day. Subsequently, on December 30, 2010, Petitioner filed a "Response to Government's Response to Petitioner's Motion to Vacate, Set Aside, or Correct Sentence," (Docket No. 63), which the Court treated as a reply to the Government's response, (Docket No. 64). The Court then ordered the Government to file a sur-reply, (*Id.*), and said filing was made on January 28, 2011, (Docket No. 68). No further briefing

has been received by the Court nor requested by the parties. Accordingly, this matter is ripe for review.

III.     LEGAL STANDARD

Petitioner filed the instant motion challenging his sentence under 28 U.S.C. § 2255(a), which provides that:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. Thus, a criminal defendant "is entitled to relief only if he can demonstrate that he is in custody in violation of federal law or the Constitution." *Jackson v. United States*, Civ. No. 07-1525, 2008 U.S. Dist. LEXIS 105048, at *27 (W.D. Pa. Dec. 30, 2008).

In order for a district court to correct a criminal defendant's sentence pursuant to a § 2255 motion to vacate, it must find "that … judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the [defendant] as to render the judgment vulnerable to collateral attack." *Garcia v. United States*, Civ. No. 97-2861, 2008 U.S. Dist. LEXIS 29298, at *5 (D.N.J. Apr. 9, 2008) (internal quotation and citation omitted). A criminal defendant bears the burden of establishing his entitlement to § 2255 relief. *United States v. Davies*, 394 F.3d 182, 189 (3d Cir. 2005). Moreover, as a § 2255 motion to vacate is a collateral attack on a sentence, a criminal defendant "must clear a significantly higher hurdle than would exist on direct appeal" to obtain relief. *See United States v. Bohn*, Crim. No. 92-61,

1999 U.S. Dist. LEXIS 18522, at *7 (E.D. Pa. Nov. 9, 1999) (quoting *United States v. Frady*, 456 U.S. 152, 166 (1982)). The defendant must also act in a timely fashion.

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214, imposed a one-year statute of limitations period on a federal prisoner's collateral attack on his federal sentence. *Johnson v. United States*, 544 U.S. 295, 299 (2005). The applicable statute of limitations is embodied in 28 U.S.C. § 2255(f), which provides:

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—
>
> > (1) the date on which the judgment of conviction becomes final;
> >
> > (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
> >
> > (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

The period of time for filing a habeas corpus petition under § 2255 begins to run when the judgment becomes "final." 28 U.S.C. § 2255(f)(1). A conviction becomes final when no further appeal can be taken. *See Kapral v. United States*, 166 F.3d 565, 570 (3d Cir. 1999).

Generally, a district court must order an evidentiary hearing in a federal habeas case if a prisoner's § 2255 allegations raise an issue of material fact. *United States v. Biberfield*, 957 F.2d 98, 102 (3d Cir. 1992). But, if there is "no legally cognizable claim or the factual matters raised by the motion may be susceptible of resolution through the district judge's review of the motion and records in the case," the motion may be decided without a hearing. *United States v.*

*Costanzo*, 625 F.2d 465, 470 (3d Cir. 1980). If a hearing is not held, the district judge must accept the criminal defendant's allegations as true "unless they are clearly frivolous on the basis of the existing record." *Gov't of Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989); *see also* Rules Governing § 2255 Proceedings, Rules 4 and 8. Here, upon consideration of Petitioner's motion for relief, the parties' subsequent submissions, and the pleadings and documents of record, the Court concludes that no hearing is necessary.[5] (*See* Docket No. 67).

IV.   DISCUSSION

In his motion, Petitioner asserts that his sentence should be vacated based on the Supreme Court's decision in *Skilling v. United States*, 130 S.Ct. 2896, which he alleges constitutes an intervening change in the law applicable to his conviction. (*See* Docket No. 57). However, two threshold procedural issues must be addressed before the Court considers the merits of his claim, i.e., waiver and timeliness. For the reasons set forth below, the Court finds that Petitioner's claim is both waived and time-barred, and Petitioner's reliance on *Skilling* is unwarranted given the facts of this case.

a.   *Waiver*

It is well-settled that "[c]riminal defendants may waive both constitutional and statutory rights provided they do so voluntarily and with knowledge of the nature and consequences of the waiver." *United States v. Mabry*, 536 F.3d 231, 236 (3d Cir. 2008). A criminal defendant may effectively waive the right to file a motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255 in a plea agreement with the Government. *Id.* at 241; *see also United States v. Khattak*, 273 F.3d 557, 561 (3d Cir. 2001) ("The ability to waive statutory rights … logically

_____

[5] On January 13, 2011, the Court received a letter from Petitioner, (Docket No. 65), which the Court construed as a motion requesting a hearing on Petitioner's motion to vacate, (Docket No. 67). The Court denied said motion on January 18, 2011, (*Id.*), determining that an evidentiary hearing was not required because Petitioner's motion shall be determined as a matter of law.

flows from the ability to waive constitutional rights."). The determination of whether the waiver is effective is a threshold issue and, if the waiver is effective, a criminal defendant is jurisdictionally barred from pursuing the habeas petition. *Mabry*, 536 F.3d at 242. A district court must determine the validity of the waiver by "specifically examining the (1) knowing and voluntary nature, based on what occurred and what defendant contends, and (2) whether enforcement would work a miscarriage of justice." *Id.* at 237. A criminal defendant has the initial "burden of presenting an argument that would render his waiver unknowing or involuntary," but the district court "has an affirmative duty both to examine the knowing and voluntary nature of the waiver and to assure itself that its enforcement works no miscarriage of justice, based on the record evidence before it." *Id.* at 237-38 (citing *Khattak*, 273 F.3d at 563).

### 1. Knowing and Voluntary Nature of the Waiver

At the outset, the Court notes that Petitioner does not present any argument challenging the knowing and voluntary nature of the waiver. Nevertheless, the Court highlights the following facts of record, which, in its estimation, demonstrate that Petitioner's waiver was both knowing and voluntary.

As previously stated, Petitioner pled guilty to Count One of the indictment pursuant to a written plea agreement with the Government. (*See* Docket No. 42). The language of the plea agreement is clear and unequivocal. It provides, in pertinent part, that "Anthony J. Aliucci … waives the right to file a motion to vacate sentence, under 28 U.S.C. § 2255, attacking his conviction or sentence, and the right to file any other collateral proceeding attacking his conviction or sentence." (*Id.* at 3). Petitioner and his counsel executed the plea agreement, thereby acknowledging that Petitioner had read the document, discussed it with his attorney, and

accepted its terms. (*Id.* at 4-5). The Court finds the terms of the plea agreement to be sufficient and clear to the waiver of collateral attack rights.

Beyond the terms of the plea agreement, the Court conducted a plea hearing on November 26, 2008, during which it engaged Petitioner in an extensive colloquy. (*See* Docket Nos. 41, 46). After being placed under oath, Petitioner initially stated that he was 39 years old and had attained a bachelor's degree in business management. (Docket No. 46 at 3-4). Petitioner then stated that he was not under the influence of any drugs, medication or alcohol; was not under the care of a physician, therapist, psychologist or psychiatrist; and had not recently been hospitalized or treated for either alcohol or narcotic addiction. (*Id.* at 4-5). Accordingly, the Court determined that Petitioner was competent to plead. (*Id.* at 5).

In response to further questioning, Petitioner answered affirmatively that he had ample opportunity to discuss his case with his attorney and that he was satisfied with the job his attorney had done for him. (*Id.*). On this point, Petitioner confirmed that his counsel had discussed all the charges against him and that he understood them. (*Id.* 5-6). He had no questions about the charges for either the Court or his counsel. (*Id.* at 6-8). The Court then explained to Petitioner what his rights would be if he went to trial. (*Id.* at 8-12). All of the charges were read to Petitioner, (*Id.* at 6-8), and the Court explained what the Government would have to prove at trial with respect to each charge, (*Id.* at 9-12). The Court also explained the statutory penalties to which Petitioner would be subject, as well as the Court's obligation to consider the advisory sentencing guidelines range in imposing a sentence, (*Id.* at 21-24, 27).

Next, the Court directly questioned Petitioner regarding the plea agreement, including whether he had: read the plea agreement, understood its contents, reviewed it with his counsel, asked his counsel any questions about the agreement and if counsel had answered any such

questions, and affixed his signature to the final page. (*Id.* at 13-14). Petitioner answered affirmatively to all of the Court's questions. (*Id.*). The Assistant United States Attorney then reviewed the material terms of the plea agreement on the record, specifically stating that Petitioner agreed to waive his right to file a motion to vacate sentence under 28 U.S.C. § 2255 and his right to take a direct appeal, subject to limited exceptions. (*Id.* at 14-18). Upon further questioning by the Court, Petitioner asserted that he agreed with the terms of the plea agreement, as stated. (*Id.* at 18).

At the Court's request, the Assistant United States Attorney set forth the elements of the offense charged at Count One of the indictment and the factual basis supporting Petitioner's plea of guilty to that count. (*Id.* at 27-31). Petitioner responded affirmatively when questioned if he agreed with the presented description of his criminal conduct and asserted that he still intended to plead guilty to Count One. (*Id.* at 31-32). Petitioner's counsel, Anthony M. Bittner, Esq., affirmed that the entry of a guilty plea by Petitioner was consistent with his advice. (*Id.* at 32). In addition, Petitioner stated that he was not forced to plead guilty and that no one had made a promise that induced him to plead guilty. (*Id.* at 32-33). Although he acknowledged that he had discussed the potential application of the sentencing guidelines in his case with counsel, (*Id.* at 25), Petitioner asserted that no one had made any kind of a prediction or promise regarding what his actual sentence may be, (*Id.* at 33). Petitioner explicitly stated that he fully understood everything that was discussed during the plea hearing and that he did not have any physical or mental illness which affected his ability to understand his rights or affected the voluntary nature of his plea. (*Id.*). Petitioner also stated that he was satisfied in all respects with the advice and representation of Mr. Bittner. (*Id.* at 34). After again being informed of the charge at Count One, Petitioner changed his plea to guilty, he and Mr. Bittner executed the change of plea form,

(*see* Docket No. 43), and the Court accepted Petitioner's guilty plea, specifically finding that his plea was knowingly and voluntarily made. (Docket No. 46 at 34-35).

In this case, consistent with the United States Court of Appeals for the Third Circuit's decision in *United States v. Corso*, 549 F.3d 921 (3d Cir. 2008), the Court specifically informed Petitioner of the waiver of the right to collaterally attack his sentence.[6] (Docket No. 46 at 19). In fact, as previously noted, the Court explicitly asked Petitioner if he understood the appeal rights that he was waiving and further inquired if he reviewed said waiver with his attorney prior to doing so. (*Id.*). Petitioner answered both questions in the affirmative. (*Id.*).

Thus, in light of this record, the Court finds that Petitioner knowingly and voluntarily waived his right to collaterally attack his sentence by filing a motion to vacate under 28 U.S.C. § 2255.

### 2.    Miscarriage of Justice

The Court also has an affirmative duty to consider "whether enforcement [of the waiver] would work a miscarriage of justice" based on the underlying facts. *Mabry*, 536 F.3d at 237. In so doing, the Court must apply "a common sense approach in determining whether a miscarriage of justice would occur if the waiver were enforced," *Id.* at 242, and consider "'the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result,'" *Id.* at 242-43 (quoting *United States v. Teeter*, 257 F.3d 14, 25-26 (1st Cir. 2001)). The United States Court of Appeals for the Third Circuit, however, has declined to identify a list of specific

---

[6] Specifically, in *Corso*, the Court of Appeals held that under Federal Rule of Criminal Procedure 11(b)(1)(N), a district court, and not the Government, is required to inform a defendant that he is waving the right to collaterally attack his sentence. 549 F.3d at 929.

circumstances which would give rise to, or constitute, a miscarriage of justice. *Mabry*, 536 F.3d at 243.

Although not presented as a distinct challenge to the validity of the waiver, Petitioner does argue that the Supreme Court's decision in *Skilling* makes his continued confinement a "complete miscarriage of justice." (Docket No. 57 at 11). In *Skilling*, the United States Supreme Court addressed the scope of 18 U.S.C. § 1346 in response to the argument that the honest-services statute, § 1346, was unconstitutionally vague because it did not adequately define the phrase "intangible right of honest services."[7] *Id.* at 2928. Rather than strike down the statute entirely, the Court limited the application of § 1346 to cover only bribery and kickback schemes. *Id.* at 2931. In so holding, the Court rejected the argument that "undisclosed self-dealing" by a public official or private employee, i.e., the taking of official action by the employee that furthers his own undisclosed financial interests while purporting to act in the interests of those to whom he owes a fiduciary duty, constituted a crime under the statute. *Id.* at 2932-33. As part of its determination, the Court contrasted the difference between conventional fraud and "honest-services" fraud as follows:

> Unlike fraud in which the victim's loss of money or property supplied the defendant's gain, with one the mirror image of the other, the honest-services theory targeted corruption that lacked similar symmetry. While the offender profited, the betrayed party suffered no deprivation of money or property; instead, a third party, who has not been deceived, provided the enrichment. For example, if a city mayor (the offender) accepted a bribe from a third party in exchange for awarding that party a city contract, yet the contract terms were the same as any that could have been negotiated at arm's length, the city (the betrayed party) would suffer no tangible loss. Even if the scheme occasioned a money or property gain for the betrayed party, courts reasoned, actionable harm lay in the denial of that party's right to the offender's "honest services."

---

[7] 18 U.S.C. § 1346 provides that "[f]or purposes of this chapter, the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services."

*Id.* at 2926 (internal citations omitted). Ultimately, in *Skilling*, the Court concluded the defendant's financial self-dealing did not constitute honest-services fraud because it did not entail a bribery or a kickback scheme. *Id.* at 2934.

Petitioner also argues that his case is substantially similar to that addressed by the Supreme Court in *Black v. United States*, 130 S.Ct. 2963 (2010). In *Black*, the Government indicted the defendants on multiple counts, including three counts of mail fraud in violation of §§ 1341 and 1346. *Id.* at 2967. At trial, the Government pursued alternative theories: (1) money-or-property fraud, and (2) honest-services fraud.[8] *Id.* at 2966. Thereafter, the district court instructed the jury, discretely, on the theft-of-money-or-property and honest-services deprivation theories advanced by the Government. *Id.* at 2967. As to the latter, the district court informed the jury, over the defendants' objection, that a person commits honest-services fraud if he "misuse[s] his position for private gain for himself and/or a co-schemer" and "knowingly and intentionally breache[s] his duty of loyalty." *Id.* Ultimately, the jury returned general verdicts of guilty on the three mail fraud counts. *Id.*

Along with *Skilling*, the Court granted certiorari in *Black* to determine what conduct Congress rendered criminal by proscribing, in § 1346, fraudulent deprivation of "the intangible right of honest services." *Id.* at 2968. Based upon its holding in *Skilling*, the Court found that the honest-services instructions given in *Black* were incorrect, as the alleged scheme to defraud did not involve any bribes or kickbacks. *Id.* at 2968 n.7. Notably, however, the Court expressed no opinion as to whether the error was ultimately harmless, but left that matter for consideration on remand. *Id.* at 2970.

---

[8] Specifically, the Government charged that (1) the defendants stole millions of dollars from their employer by fraudulently paying themselves bogus "noncompetition fees" and that (2) by failing to disclose their receipt of those fees, the defendants deprived their employer of their honest services as managers of the company. *Id.* at 2967.

Within this framework, Petitioner attempts to establish that his conviction under § 1341 was predicated on a scheme to defraud his employer of honest-services, as compared to money or property, believing that if he does so, his conviction will be vacated under *Skilling* and *Black* because he received no kickbacks or bribes. To accomplish this task, Petitioner begins by alleging that he provided a service to his employer. (Docket No. 57 at 2). Specifically, Petitioner states:

> The charge was based on the facts [sic] that [Petitioner] was a senior executive who abused his position to scheme or … defraud his employer of their [sic] intangible right of honest services, since [Petitioner] provided … services … to his employer and breached his fiduciary duty of honesty and loyalty involving a violation of the duty to disclose, for purpose [sic] of the honest fraud definition under [§ 1341].

(*Id.* at 6). Petitioner then argues that this conclusion is supported by the fact that the Government sought a two level adjustment at the time of sentencing under Guideline § 3B1.3 for "abuse of position of trust." (*Id.* at 7). In this regard, Petitioner states, due to the Government's application of the two level enhancement to Petitioner's sentencing calculations, it is "obvious that the Government was claiming that [Petitioner] abused his fiduciary responsibilities to the victim." (*Id.* at 8). Petitioner concludes his argument by contending that the Government's allegations in Count One of the indictment that Petitioner "falsely represented to the victim that there were legitimate business expenses" and that "the victim discovered the [Petitioner's] scheme" further establishes that the Government's charges were based on the definition of "honest-services." (*Id.* at 8).

In this Court's estimation, neither *Skilling* nor *Black* has any application here. Although Petitioner might wish it were otherwise, he was not charged with, nor did he plead guilty to, honest-services fraud under § 1346. *See Skilling*, 130 S.Ct. at 2928. Moreover, in this case, the Government did not advance alternative theories of money-or-property fraud or honest-services

fraud. *See Black*, 130 S.Ct. at 2966. Instead, the indictment, which enumerated the acts attributable to Petitioner, as well as the Court's questioning, the Assistant United States Attorney's description of the scheme, and the presentence investigation report's offense conduct section, make it clear that Petitioner's conduct represented conventional "mirror image" mail fraud pursuant to § 1341. *See Skilling*, 130 S.Ct. at 2926. He intentionally misrepresented to Global that NNI had provided services to Global and thereby fraudulently induced Global to send money that it would not otherwise have sent. (*See* Docket Nos. 1, 46). This money was credited to Petitioner in connection with his own business. (*Id.*). Hence, this is precisely the type of fraud where "the victim's loss of money or property supplied the defendant's gain." *Skilling*, 130 S.Ct. at 2926.

In addition, the Court does not find the arguments advanced by Petitioner to establish that his conviction was predicated on a scheme to defraud his employer of honest-services, as compared to money or property, persuasive. Initially, the allegation that Petitioner provided a service to his employer does not change the fact that he knowingly defrauded Global out of more than $100,000.00. Similarly, the allegations in Count One of the indictment that Petitioner "represented to Global that [NNI] had provided various services to Global, when in truth and fact, and as [Petitioner] well knew, such representations were false and fraudulent" is consistent with the elements of the offense of money fraud pursuant to § 1341. Finally, the Court disagrees with Petitioner's apparent argument that, in cases brought pursuant to § 1341, a two level adjustment under Guideline § 3B1.3 is only appropriate in prosecutions for "honest-services" fraud. Instead, as recognized in the Court's Tentative Findings and Rulings, Guideline § 3B1.3 provides a two level increase if the defendant abused a position of public or private trust in a manner that significantly facilitated the commission or concealment of the offense. (Docket No.

51 at 5). Applying the two-step inquiry provided by the United States Court of Appeals for the Third Circuit in *United States v. Hart*, 273 F.3d 363, 375-76 (3d Cir. 2001), this Court concluded that this enhancement was correctly applied, comparing Petitioner's offense to a bank executive's embezzlement of bank funds, (*Id.* at 5-6), which could be described as money fraud.[9]

Significantly, consistent with the Court's decision, several courts have already concluded that *Skilling* does not apply to charges of traditional fraud pursuant to the mail and wire fraud statutes. *See, e.g.*, *Conti*, 2010 U.S. Dist. LEXIS 118111, at *14. In *United States v. Conti*, the defendant, similarly to Petitioner, argued that his convictions under 18 U.S.C. §§ 371 and 1341 should be vacated based on the Supreme Court's decision in *Skilling* because the defendant received no kickbacks or bribes. *Id.* at *12. The district court rejected this argument and found that the "'honest services' provision of the mail fraud statute addressed by the Supreme Court in *Skilling* 'played no role' in [the defendant's] indictment and guilty plea." The Court holds the same here today.

Given *Skilling's* and *Black's* inapplicability, Petitioner has failed to demonstrate a "miscarriage of justice." *See Id.* at *15. Instead, the Court finds that "enforcing the waiver is in line with justice, not a miscarriage of it," and the Court will not exercise jurisdiction over Petitioner's claims as he knowingly and voluntarily waived his right to file the instant motion. *Mabry*, 536 F.3d at 244. As a result, the Court enforces the terms of the plea agreement and Petitioner's motion must be dismissed.

b. *Statute of Limitations*

---

[9] In *Hart*, the Third Circuit held that the two level enhancement under Guideline § 3B1.3 applies to positions where the defendant has control over transactions essential to the crime and where the victims of the crime relied upon the defendant's integrity associated with his or her position of trust. 273 F.3d at 375-76. A court must apply the fact intensive two-step inquiry of (1) whether the defendant occupied a position of trust and (2) whether he used that position in a way that significantly facilitated the crime. *Id.*

Even if Petitioner had not waived his right to file a collateral proceeding attacking his conviction or sentence, *see* Sec. IV(a), *supra*, Petitioner's motion must be denied because it was not timely filed.

In the instant case, Petitioner did not file a direct appeal. Therefore, his conviction became final ten days after his judgment of conviction when the deadline for filing an appeal expired.[10] Fed. R. App. P. 4(b)(1)(A); *see also Kapral*, 166 F.3d at 577 ("If a defendant does not pursue a timely direct appeal to the court of appeals, his or her conviction and sentence become final, and the statute of limitation begins to run, on the date on which the time for filing such an appeal expired."); *see also Evans v. United States*, Civ. No. 05-496, 2006 U.S. Dist. LEXIS 21391, at *7 (W.D. Pa. Apr. 20, 2006) ("Because petitioner did not directly appeal his judgment of conviction to the court of appeals, his judgment of conviction became final when the time for filing a notice of appeal expired—i.e., ten days after his judgment of conviction."). The judgment of conviction was entered on April 8, 2009, (Docket No. 54), and became final on April 22, 2009 after the deadline for filing a notice of appeal expired, Fed. R. App. P. 4(b)(1), 26(a). Petitioner filed the instant motion to vacate on October 5, 2010, over 17 months later. (Docket No. 57). Petitioner's motion, therefore, is not timely unless petitioner can establish either that the limitations period should run from one of the other dates set forth in the statute, s*ee* 28 U.S.C. § 2255(f), or that he is entitled to equitable tolling of the one-year limitations period, *see United States v. Bass*, 268 F. App'x 196, 199 (3d Cir. 2008).

Petitioner's contention that his motion is timely rests entirely on his belief that the Supreme Court's decision in *Skilling*, 130 S.Ct. 2896, constituted an intervening change in the law. (Docket No. 59 at 5). However, as previously explained, this Court has concluded that

---

[10] Effective December 1, 2009, the time period prescribed in Federal Rule of Appellate Procedure 4(b)(1)(A) was changed from ten days to fourteen days. The revised rule does not apply in this case, however, because the judgment was entered prior to the effective date of the amendment.

*Skilling* has no applicability to this case. *See* Sec. IV(a)(2), *supra*. Thus, Petitioner's reliance on § 2255(f)(3) is misplaced.

Beyond the statutory provisions of § 2255, Petitioner's motion may still be considered timely if he can establish that an equitable tolling of the limitations period is warranted. *United States v. Washington*, Crim. No. 89-152, 2010 U.S. Dist. LEXIS 73797, at *6-7 (W.D. Pa. July 22, 2010) ("[T]he one-year limitation period for filing Section 2255 petitions is a statute of limitations, and therefore is subject to equitable tolling.") (quoting *Holland v. Florida*, 130 S.Ct. 2549 (2010)). The doctrine of equitable tolling may toll the statute of limitations under § 2255(f), but it may be invoked "'only sparingly.'" *Bass*, 268 F. App'x at 199 (quoting *United States v. Midgley*, 142 F.3d 174, 179 (3d Cir. 1998)). In order to toll the statute of limitations, Petitioner must demonstrate "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in the way." *Bass*, 268 F. App'x at 199 (quoting *Pace v. Diguglielmo*, 544 U.S. 408, 415 (2005)). Here, Petitioner has not argued that the statute of limitations should be equitably tolled and, in this Court's estimation, there is no evidence supporting same. Indeed, as stated by another court, within this context "[a] change in the law does not constitute an extraordinary circumstance." *Wright v. United States*, Civ. No. 09-1066, 2010 U.S. Dist. LEXIS 4455, at *8 (M.D. Fla. Jan. 5, 2010). Therefore, given the Court's finding that § 2255(f) is not applicable, accompanied by the determination that Petitioner is not entitled to equitable tolling of the one-year limitations period, Petitioner's motion must also be dismissed as time-barred.

V.      CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a 28 U.S.C. § 2255 petition, the court must also make a determination as to whether a certificate of appealability ("COA") should issue

or the clerk of the court of appeals shall remand the case to the district court for a prompt determination as to whether a certificate should issue. *See* 3d Cir. L. App. R. 22.2. "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue (and an appeal of the district court's order may be taken) if the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).

This Court concludes that Petitioner's motion should be denied as a matter of law because Petitioner has waived his right to file a § 2255 motion and because his motion was not timely filed. The Court is persuaded that reasonable jurists would not debate these procedural rulings. Moreover, even absent these procedural defects, as the Supreme Court's decision in *Skilling* is not applicable to Petitioner's conviction given it was not based on an "honest-services" theory of prosecution, the Court is further persuaded that Petitioner has not shown a substantial denial of a constitutional right. Thus, the Court declines to issue a COA.

VI.    CONCLUSION

Based on the foregoing, Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [57] is DENIED. An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Date:    February 11, 2011

cc/ecf: Shaun E. Sweeney, AUSA

Anthony J. Aliucci
09766-068
FCI Morgantown
Post Office Box 1000
Morgantown, WV 26507-1000